IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL J. ALLMAN and MICHAEL ALLMAN,

     Plaintiffs,

v.                                                    Civil Action No. 5:08CV155
                                                                    (STAMP)
CHANCELLOR HEALTH PARTNERS, INC.
and WEIRTON HEALTH PARTNERS, INC.,

     Defendants.


**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT,**
**DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS,**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
**AND DENYING AS MOOT DEFENDANTS' MOTION FOR A**
**MORE DEFINITE STATEMENT CONCERNING COUNT THREE**

I.  Procedural History

The plaintiffs, Carol Allman and her husband, Michael Allman (collectively, "the plaintiffs"), filed a complaint against defendants Chancellor Health Partners, Inc. and Weirton Health Partners, Inc., in the Circuit Court of Brooke County, West Virginia.  The original complaint asserted five causes of action: retaliatory discharge (Count One); detrimental reliance (Count Two); defamation (Count Three); intentional infliction of emotional distress/tort of outrage (Count Four); and loss of consortium (Count Five).[1]  The defendants removed the case to this Court.  The defendants filed a motion for a more definite statement concerning

---

[1]The complaint listed the intentional infliction of emotional distress claim and the loss of consortium claim as separate counts but erroneously designated both as "Count Four."

the defamation claim (Count Three). The defendants also filed a motion to dismiss, or in the alternative, for summary judgment, on all counts in the original complaint, to which the plaintiffs responded. The plaintiffs then filed a motion to remand, as well as an amended complaint.[2] The defendants responded in opposition to the motion to remand. They also filed a motion to dismiss the amended complaint that incorporated a reply to the plaintiffs' response to the defendants' motion to dismiss, or in the alternative, for summary judgment.

By memorandum opinion and order dated March 2, 2009, this Court denied the plaintiffs' motion to remand. Still pending before this Court and ripe for disposition are the defendants' motion to dismiss the amended complaint; the defendants' motion to dismiss, or in the alternative, for summary judgment on the original complaint; and the defendants' motion, in the alternative, for a more definite statement concerning Count Three of the original complaint. For the reasons that follow, this Court finds that the defendants' motion to dismiss the amended complaint should be denied on the merits; and that the defendants' motion to dismiss, or in the alternative, for summary judgment and the defendants' motion, in the alternative, for a more definite

_____

[2]The amended complaint set forth additional allegations concerning the plaintiffs' defamation claim in Count Three.

2

statement concerning Count Three of the original complaint should be denied as moot.

## II. <u>Facts</u>

Carol Allman ("Allman") was employed as a registered nurse by the defendants to work at their assisted living facility in Weirton, West Virginia. Allman began working for the defendants on approximately June 1, 2007. Her employment was terminated on approximately April 2, 2008.

In Count One of her complaint, Allman asserts a claim for retaliatory discharge. She alleges that she attempted to ensure that the defendants' facility complied with state legal requirements concerning the admission and care of residents of the facility. According to Allman, the defendants terminated her employment in an effort to circumvent the state legal requirements and in retaliation for her efforts to ensure compliance. Allman further alleges that her discharge violates West Virginia's public policy as set forth at West Virginia Code of State Rules §§ 64-14-5 and 64-14-7.

Count Two asserts a claim for detrimental reliance. In Count Two, Allman alleges that she left her previous employment as a registered nurse based upon direct and specific representations by individuals with apparent authority to make such representations that her employment would not be terminated as long as she performed competently. Allman states that she relied upon the

specific statements implying a promise of job security when she resigned from her position with her former employer. Allman further claims that she performed competently throughout her tenure in the defendants' employment but that she was nevertheless terminated in breach of the implied promise and specific representation of job security.

Count Three is a claim for defamation. Count Three of Allman's amended complaint alleges that two of the defendants' employees, identified as Sherri Jo Watkins and a person named "Amy" (last name unknown), falsely advised certain third parties that Allman had been discharged because of poor job performance. According to Allman, the statements by the defendants' employees were not statements of opinion, but rather were false statements intended by the speakers to be statements of fact when the speaker knew or should have known that Allman did not perform poorly.

The amended complaint asserts in Count Four a claim for intentional infliction of emotional distress/tort of outrage. Allman contends that the defendants' actions were willful, malicious and made with reckless disregard for Allman's rights. She further contends that the defendants' actions were calculated to inflict emotional distress upon her and that she suffered emotional distress as a result of their conduct.

In Count Five, Allman's husband, Michael, claims that the defendants' conduct directly and proximately resulted in the loss of his wife's society, companionship, and consortium.

## II.  Applicable Law

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true.  See Erikson v. Pardus, 127 S.Ct. 2197, 2200 (2007)(citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)); Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990).  The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (3d ed. 2007).

A Rule 12(b)(6) motion must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  Id. § 1357, at 304, 310.  "[O]nce a claim

5

has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." _Twombly_, 127 S. Ct. at 1969.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in limited circumstances. _Rogers v. Jefferson-Pilot Life Ins. Co._, 883 F.2d 324, 325 (4th Cir. 1989). A dismissal under Rule 12(b)(6) is granted only in cases in which the facts as alleged in the complaint clearly demonstrate that the plaintiff does not state a claim and is not entitled to relief under the law. 5A Wright & Miller, _supra_ § 1357, at 344-45.

## III. _Discussion_

The defendants argue that the plaintiffs' complaint must be dismissed because it fails to state a claim upon which relief can be granted and because it fails to meet the minimum pleading requirements recently established by the United States Supreme Court in _Bell Atlantic Corp. v. Twombly_, 127 S. Ct. 1955 (2007). For the reasons below, each of the defendant's arguments fails to support dismissal of this action.

A. _The Pleading Requirements of Twombly_

In _Bell Atlantic Corp. v. Twombly_, 127 S. Ct. 1955 (2007), the United States Supreme Court addressed the sufficiency of an antitrust complaint pursuant to Federal Rule of Civil Procedure 8(a)(2). The class of plaintiffs in _Twombly_ alleged that major

telecommunications providers engaged in parallel conduct indicative of a conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. In reviewing the plaintiffs' complaint, the Court utilized a "plausibility standard," id. at 1968, under which a complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 1974. The Court rejected the often-quoted language from its decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that dismissal under Rule 12(b)(6) is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that Conley's "no set of facts" language "earned its retirement" because it had spawned among courts the unintended literal reading that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." Twombly, 127 S. Ct. at 1968.

In the wake of Twombly, uncertainty exists regarding the level of pleading required to satisfy Rule 8, which prior to Twombly was understood as requiring pure notice pleading in all manner of cases except those identified in Rule 9. See Anderson v. Sara Lee Corp., 508 F.3d 181, 188 n.7 (4th Cir. 2007)("courts and commentators have been grappling with the decision's meaning and reach"); Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)("[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings has

recently been created by the Supreme Court's decision in [Twombly]"). Specifically, it is unclear whether Twombly alters the pleading standard only for complex antitrust cases or whether it has a broader application. The United States Court of Appeals for the Fourth Circuit has not yet offered guidance regarding the reach of Twombly. In disposing of the defendants' motion to dismiss, however, this Court need not resolve the question. Even assuming that Twombly requires courts to use a plausibility standard in all cases, the plaintiffs' complaint meets that standard.

A review of the complaint reveals that the plaintiffs have met their obligation to "provide the 'grounds' of their 'entitlement to relief'" by setting forth "more than labels and conclusions, and a formulaic recitation of the elements . . . ." Twombly, 127 S. Ct. 1965. The plaintiffs have set forth sufficiently specific factual allegations concerning each of their claims to be plausible on their face.

B.    Defendants' Motion to Dismiss the Amended Complaint

        1.    Retaliatory Discharge

The defendants argue that Allman's retaliatory discharge claim must fail as a matter of law because it fails to establish that the defendants' conduct contravened any substantial public policy of the state of West Virginia. In the defendants' view, Allman's reliance upon West Virginia Code of State Rules §§ 64-14-5 and

64-14-7 as the substantial public policy the defendants are alleged
to have violated is misplaced.  The West Virginia legislature has
authorized the Secretary of the State Department of Health and
Human Resources to promulgate legislative rules "establishing
minimum standards of operation of assisted living residences" in
the state of West Virginia.  W. Va. Code § 16-5D-5(b).  In West
Virginia, such legislative rules have "'the force of law.'"
Appalachian Power Co. v. State Tax Department of West Virginia, 466
S.E.2d 424 (1995) (quoting W. Va. Code § 29A-1-2(d)).

The legislative rules establishing the public policy the
defendants are alleged to have contravened provide:

>    7.1.a.  The licensee shall not admit to the assisted
>    living residence individuals requiring ongoing or
>    extensive nursing care and shall not admit or retain
>    individuals requiring a level of service that the
>    residence is not licensed to provide or does not provide.
>    (Class I)[3]
>
>    7.6.c.  Within reasonable expectations, the licensee
>    shall implement the recommendations of the registered
>    nurse regarding care, services and staff training.
>    (Class I)

---

[3]The rules governing the operation of assisted living
facilities in West Virginia are designated as Class I, Class II, or
Class III.  See W. Va. Code § 16-5D-5(c).  Under West Virginia Code
§ 16-5D-5(c)(1), "Class I standards are standards the violation of
which, as the Secretary determines, would present either an
imminent danger to the health, safety or welfare of any resident or
a substantial probability that death or serious physical harm would
result."

7.6.j. A registered nurse shall participate in the decision to admit or discharge a resident with nursing care needs. (Class II)[4]

The amended complaint also alleges that the defendants contravened a substantial public policy by violating a Class I legislative rule set forth at West Virginia Code of State Rule § 16-14-5. Subsection 5.4.b of that rule establishes staffing requirements for assisted living facilities, specifying the minimum number of employees to be on duty at various times of the day depending upon the population, health conditions and functional needs of residents in assisted living facilities. See W. Va. Code R. § 16-14-5.

According to the defendants, these legislative rules do not constitute a specific statement of public policy because they are too general. In support of their position, the defendants rely upon the West Virginia Supreme Court decision in Birthisel v. Tri-Cities Health Services Corp., 424 S.E.2d 606 (W. Va. 1992). There, the West Virginia Supreme Court stated that "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." Birthisel, 424 S.E.2d at 612. "Inherent in the term 'substantial public policy' is the

_____

[4]"Class II standards are standards which the Secretary determines have a direct or immediate relationship to the health, safety or welfare of any resident, but [the violation of] which do[es] not create imminent danger." W. Va Code § 16-5D-5(c)(2).

concept that the policy will provide specific guidance to a reasonable person." Id.

With these principles in mind, the Birthisel court considered the retaliatory discharge claims of a social worker who was discharged after she refused to comply with her supervisor's directive to add information to closed patient charts in preparation for an accreditation visit. Id. at 609. The social worker invoked certain provisions of the West Virginia Code of Ethics to establish a substantial public policy. Those provisions state:

> THE SOCIAL WORKER'S CONDUCT AND COMPORTMENT AS A SOCIAL WORKER:
>
> PROPRIETY-The social worker should maintain high standards of personal conduct in the capacity or identity as social worker.
>
> COMPETENCE AND PROFESSIONAL DEVELOPMENT-The social worker should strive to become and remain proficient in professional practice and the performance of professional functions.
>
> INTEGRITY-The social worker should act in accordance with the highest standards of professional integrity.
>
> THE SOCIAL WORKER'S ETHICAL RESPONSIBILITY TO CLIENTS:
>
> PRIMACY OF CLIENTS' INTERESTS-The social worker's primary responsibility is to the clients.

Id. at 610 n.4 (quoting the West Virginia Social Work Code of Ethics, 25 W. Va. Code R. App. A). The social worker also relied upon the following policy language set forth in the social workers licensing statute:

> "The Legislature finds that the profession of social work profoundly affects the lives of the people of this state.
>
> "The profession of social work exists to provide humane and effective social services to individuals, families, groups, communities and society in order that social functioning may be enhanced and the quality of life improved.
>
> "Social workers are involved with individuals who are hurt, vulnerable and having difficulty in areas of their lives which are extremely sensitive. Failure to help these individuals, whether through incompetence or irresponsibility, is a serious matter. These individual citizens have the potential to be greatly harmed by the services of ill-prepared and incapable persons acting as social workers. The economic burden of social services which do not give effective aid is a serious social problem.
>
> "It is the purpose of this article to protect the public by setting standards of qualification, education, training and experience for those who seek to engage in the practice of social work and to promote high standards of professional performance for those engaged in the profession of social work."

Id. at 613 n.11 (quoting W. Va. Code § 30-30-1). The Birthisel court concluded that these provisions are general admonitions which are aspirational in nature and that, consequently, these rules do not provide specific guidance to a reasonable person and are subject to interpretation.

Allman contends that Birthisel is inapposite to this action. This Court agrees. First, the rules upon which Allman relies use the word "shall" and therefore require compliance. "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, Nelson v. West Virginia Public Employees Ins. Bd., 300 S.E.2d 86

12

(1982).  By contrast, the rules at issue in <u>Birthisel</u> use the word

"should" and are therefore merely hortatory.  Moreover, this Court

finds that the directives set forth in the legislative rules Allman

cites are sufficiently articulated to provide specific guidance to

a  reasonable  person,  whereas  in  <u>Birthisel</u>,  the  rules  merely

instructed social workers "to strive" to reach purely subjective

goals,  such  as  maintaining  "high  standards"  and  becoming

"proficient in professional practice."  <u>Birthisel</u>, 424 S.E.2d at

610 n.4 (quoting the West Virginia Social Work Code of Ethics, 25

W. Va. Code R. App. A).

This Court also agrees with Allman that <u>Tudor v. Charleston</u>

<u>Area Medical Center, Inc.</u>, 506 S.E.2d 554 (W. Va. 1997), provides

more persuasive legal authority in relation to this action.  There,

the  West Virginia  Supreme  Court  held  that  rules  very  similar  to

those  at  issue  in  this  action  stated  a  substantial  public  policy

warranting a claim for constructive retaliatory discharge where the

plaintiff,  a  registered  nurse  at  a  hospital,  resigned  after

multiple  failed  attempts  to  persuade  the  hospital  to  comply  with

the staffing mandate provided by West Virginia Code of State Rules

§ 64-12-14.2.4.  Syllabus Point 5 of that decision held:

> West Virginia Code of State Regulations § 64-12-14.2.4
> (1987) sets forth a specific statement of a substantial
> public policy which contemplates that a hospital unit
> will be properly staffed to accommodate the regulation's
> directive; to ensure that patients are protected from
> inadequate staffing practices; and to assure that medical
> care  is  provided  to  hospital  patients,  especially

children and young adolescents, who must depend upon others to protect their medical interests and needs.

Syl. Pt. 5, <u>Tudor</u>, 506 S.E.2d at 558.

As in <u>Tudor</u>, the legislative rules invoked in this action mandate certain conduct, including specified staffing practices, and they implicate medical welfare concerns for a vulnerable population.[5] Given the similarities between this case and <u>Tudor</u>, and the differences between this case and <u>Birthisel</u>, this Court rejects the defendants' arguments that the plaintiffs' retaliatory discharge allegations fail to state a claim upon which relief can be granted.

### 2.    Detrimental Reliance

The defendants contend that Allman's claim for detrimental reliance must fail as a matter of law because she has failed to allege a specific promise of job security sufficient to overcome the presumption that the employment relationship was terminable at will. This argument is unavailing.

West Virginia law presumes that employment is terminable at will. Syl. Pt. 1, <u>Adkins v. Inco Alloys Intern., Inc.</u>, 417 S.E.2d 910, 911 (W. Va. 1992); Syl. Pt. 2, <u>Wright v. Standard Ultramarine & Color Co.</u>, 90 S.E.2d 459 (1955); Syl. Pt. 2, <u>Cook v. Heck's, Inc.</u>, 342 S.E.2d 453 (1986). "Where an employee seeks to establish a permanent employment contract or other substantial employment

---

[5]In <u>Tudor</u>, the vulnerable population was identified as children and young adolescents. Here, it is the elderly.

right, either through an express promise by the employer or by implication . . . , such claim must be established by clear and convincing evidence." Syl. Pt. 3, <u>Adkins</u>, 417 S.E.2d at 911.

According to the defendants, Allman has failed to establish by clear and convincing evidence that her employment relationship with the defendants was not an at-will relationship. This argument misses the point for two reasons. First, the defendants appear to confuse what must be pled with what must be proven. At this stage of the proceedings, Allman need only *allege* sufficient facts to state a cause of action for detrimental reliance. She is not required, at this procedural juncture, to *establish* her claim by evidence under any standard of proof.

Second, as Allman correctly observes, West Virginia law creates an exception to the general rule presuming at-will employment: where an employment contract is "supported by a consideration other than the obligation of service to be performed by the employee and the obligation of the employer to pay wages or salary for such service," the at-will presumption does not apply. <u>Wright</u>, 90 S.E. at 463. Allman's amended complaint identifies specific representations which she alleges were made to her by individuals with apparent authority to make such representations and upon which she relied, to her detriment, before she resigned from her position with her former employer. Allman's resignation from her prior employment based upon the alleged promise of

15

permanent employment by the defendants, if proven, constitutes consideration sufficient to defeat the at-will presumption. <u>See First National Bank v. Marietta Manufacturing Co.</u>, 153 S.E.2d 172 (W. Va. 1967)("[A] detriment to the promisee is sufficient consideration for a contract.") Whether Allman's reliance on such alleged promise was reasonable is matter for the factfinder to determine. <u>See</u> Syl. Pt. 4, <u>Cook v. Heck's, Inc.</u>, 342 S.E.2d 453 (W. Va. 1986). Accordingly, this Court rejects the defendants' contention that the plaintiffs' claim for detrimental reliance must be dismissed.

     3.  <u>Defamation</u>

The defendants argue that the defamation claim in the amended complaint fails to state a claim upon which relief can be granted because the statements Allman alleges to be defamatory are non-actionable statements of opinion. This Court disagrees.

To state a claim for defamation, a plaintiff must allege "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, <u>Crump v. Beckley Newspapers</u>, 320 S.E.2d 70 (W. Va. 1983). Allman's amended complaint alleges facts pertaining to each element. Moreover, with respect to the falsity element, her allegation is not that the defendants defamed her by stating that her job performance was poor. Rather, Allman alleges that the

defendants defamed her by falsely stating that she was fired because she was incompetent when, in fact, she was discharged because she was attempting to comply with state legal requirements while the defendants were attempting to circumvent them. Assuming Allman's allegations are true, as this Court must do for purposes of a Rule 12(b)(6) motion, this Court finds that the alleged statements constitute false statements of fact, not statements of opinion. Accordingly, the defamation claim set forth in Count Three of the amended complaint must survive the defendants' motion to dismiss.

4. <u>Intentional Infliction of Emotional Distress/Tort of Outrage</u>

The defendants contend that the plaintiffs' allegations concerning intentional infliction of emotional distress/tort of outrage fail to state a claim upon which relief can be granted because the West Virginia Workers Compensation Act confers employer immunity for such claims. The defendants also argue that the plaintiffs have failed to allege any facts indicating that the defendants' conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency or that the plaintiffs sustained the type of injury required to assert such a claim. These arguments must be rejected.

The West Virginia Workers Compensation Act is inapplicable to this action. The West Virginia Workers Compensation Act applies

where the alleged injury occurs in the course of and results from the employment.  See Sydenstricker v. Unipunch Products, Inc., 288 S.E.2d 511 (W. Va 1982); Persinger v. Peabody Coal Co., 474 S.E.2d 887, 893 (W. Va. 1996).  Here, the alleged injuries giving rise to Allman's intentional infliction of emotional distress/tort of outrage claim allegedly result from the defendants' conduct surrounding Allman's dismissal and therefore occurred outside the course of her employment.

This Court also rejects the defendants' arguments that Allman's claim for intentional infliction of emotional distress/ tort of outrage must be dismissed because she has failed to allege any facts setting forth the required elements of this cause of action.  To prevail on a claim for intentional infliction of emotional distress/tort of outrage, a plaintiff must show the following four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, 425 (W. Va. 1998).

Here, the defendants contend that Allman has failed to allege sufficient facts that the defendants' actions were atrocious,

intolerable, and so extreme and outrageous as to exceed the bounds of decency and that she has failed to allege any facts indicating that she has suffered emotional distress so severe that no reasonable person could be expected to endure it. This Court finds that the plaintiffs have alleged sufficient facts concerning the circumstances surrounding her discharge and resulting emotional distress to state a plausible claim for relief. The defendants' arguments go to matters of proof, not to matters of pleading.

Because this Court finds the defendants' arguments relating the intentional infliction of emotional distress/tort of outrage claim to be without merit, the defendants' motion to dismiss will be denied as to this claim.

5. Loss of Consortium

In light of this Court's disposition of the defendants' motion concerning counts one through four, the defendants' final contention must fail. The defendants correctly observe that Michael Allman's claim for loss of consortium derives from the underlying tort claims of his wife, Carol Allman. See e.g., Belcher v. Goins, 400 S.E.2d 830,834 (1990) (observing that loss of consortium claims are derivative). Because Carol Allman's claims survive the defendants' motion to dismiss, so, too, does Michael Allman's loss of consortium claim.

C. Other Motions

The defendants' other pending motions relate to the plaintiffs' original complaint, not the amended complaint. This Court's denial of the defendants' motion to dismiss the amended complaint renders those pending motions moot. Accordingly the defendants' motion to dismiss, or in the alternative, for summary judgment (Doc. 7) and the defendants' motion for a more definite statement concerning Count Three (Doc. 5) will be denied.

IV. Conclusion

For the reasons stated above, this Court concludes that the plaintiffs' amended complaint states claims for retaliatory discharge, detrimental reliance, defamation, intentional infliction of emotional distress/tort of outrage, and loss of consortium. Accordingly, the defendants' motion to dismiss the amended complaint is DENIED. Further, the defendants' motion for a more definite statement concerning Count Three of the original complaint is DENIED AS MOOT. The defendants' motion to dismiss or, in alternative for summary judgment on the original complaint is also DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    May 26, 2009


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE